DECISION
Plaintiff appeals from Defendant's disallowance of her claimed child and dependent care credit (child care credit) and working family child care credit (working family credit) for tax year 2007. A trial was held April 27, 2010, in the courtroom of the Oregon Tax Court. Plaintiff appeared on her own behalf. Defendant was represented by Jared Houser, an auditor with the Department of Revenue (Defendant).
 I. STATEMENT OF FACTS
Defendant issued a Notice of Deficiency Assessment on March 10, 2009, for the 2007 tax year. (Ptf's Compl at 8.) Plaintiff submitted a written objection to Defendant. Defendant held a telephone conference with Plaintiff on December 5, 2008. (Ptf's Compl at 4.) Defendant's conference officer, Randy Robertson, concluded that the documentation Defendant received from Plaintiff was inadequate to substantiate her claimed child care payments and sent a Notice of Deficiency Assessment on March 10, 2009. (Ptf's Compl at 4, 8.) Plaintiff timely appealed to this court.
At trial, Plaintiff testified that she worked part-time outside the home in 2007. Plaintiff generally worked Monday through Friday, from 9:00 a.m. until approximately 3:30 p.m., as a post-doctoral fellow in molecular biology at the University of Oregon. Plaintiff testified that she *Page 2 
also worked as a ski racing coach on weekends during the winter and she occasionally worked additional hours during the week as a Russian translator for an international adoption organization. Plaintiff testified that she worked full-time as a translator for a group from the Ukraine for two weeks in May 2007.
In 2007, Plaintiff was a single mother with two children, who were seven and 11 years old at the time. Plaintiff employed a college student, Jesse Herren (Herren), to care for her children while she worked. Plaintiff testified that she met Herren a few years before the tax year at issue, when he supervised her sons at the YMCA daycare. Plaintiff testified that, in her opinion, Herren was one of the YMCA's best employees. Plaintiff also testified that she employed Herren because her children really liked him and her children's approval was very important to her in selecting a child care provider.
Plaintiff reportedly paid Herren $5 per hour to care for her two children after school and transport them to and from after-school activities. According to Plaintiff, the children were released from school at 2:35 p.m. and Herren cared for them until Plaintiff arrived home, usually between 4:00 p.m. and 5:00 p.m. Plaintiff testified that Herren also cared for the children when she worked as a translator. According to Plaintiff, Herren did not work a set schedule during the school year. Instead, he kept track of the hours he cared for Plaintiff's children and submitted "receipts" to Plaintiff requesting payment approximately every other month. Plaintiff testified that the only exception to this payment schedule was the summer of 2007 when Plaintiff paid Herren a flat fee of $1,000 for six weeks. The children attended day camp for part of the time and Herren cared for them when they were not at camp. Plaintiff stated that she did not employ Herren for the remainder of the summer because her mother came for three weeks in August to care for the children. *Page 3 
Plaintiff testified at trial that she always paid Herren in cash. According to Plaintiff, cash was Herren's preferred method of payment and he preferred lump sum payments rather than a weekly or bi-weekly paycheck. Plaintiff claimed child care expenses in the amount of $2400 on her 2007 Oregon tax return. (Ptf's Ex 10; Def's Ex A-15.) Based on those expenses and her income in 2007, Plaintiff claimed a child care credit of $192 and a working family credit of $960. (Id.)
In addition to her own sworn testimony, Plaintiff submitted a signed letter dated April 10, 2010, from Herren explaining that he was unable to appear for trial because he had just started a new job at the Lane County Department of Youth Services as a juvenile counselor and certifying that he did in fact care for Plaintiff's children in 2007. (Ptf's Ex 2.) Among the supporting statements in the letter is the following: "I certify that during 2007 I received $2400 from Margarita, and all the payments were cash payments." (Id.) The letter further states: "I certify that the copies of the receipts that she submitted are copies of original receipts with my original signature on them." (Id.) As proof of payment, Plaintiff also submitted copies of six handwritten "receipts" signed by Herren requesting payments of $200 for January and February; $200 for March and April; $400 for May and June; $1,000 for June, July, and August (the summer); $300 for September and October; and $300 for November and December 2007. (Ptf's Ex 1; Def's Ex A-3.) Plaintiff also provided bank records and a bank receipt to corroborate the payments she allegedly made to Herren. (Ptf's Exs 11-16; Def's Exs A-7 — A-14.) Defendant contends that that evidence is inadequate to substantiate the claimed credits absent additional third-party corroborating documents to verify payment. *Page 4 
 II. ANALYSIS
Plaintiff contends that she is entitled to the working family credit and the child care credit based on the $2,400 in child care payments she allegedly made to Herren. Plaintiff maintains that the evidence she has provided, specifically the receipts from Herren, the letters from Herren affirming his employment by Plaintiff, and her own sworn testimony, is sufficient to prove that she made the claimed child care payments. Thus, Plaintiff asserts she should be permitted to claim both credits.
Defendant contends that the documents provided by Plaintiff are inadequate to substantiate the child care payments. Defendant claims the "receipts" provided by Herren are more analogous to billing statements because Herren occasionally submitted them to Plaintiff prior to or contemporaneous with payment, as opposed to after payment. Defendant also expresses concern that Plaintiff's testimony regarding her method of payment differed between the time of the conference with Defendant in 2008 and the trial in 2010. At the 2008 conference, Plaintiff claimed that she paid Herren for services in cash, by check, and by credit card, and she stated that she would try to get copies of canceled checks and credit card records to prove payment. (Ptf's Ex 10; Def's Ex A-15.) However, beginning with her Complaint to the court and continuing through trial, Plaintiff asserts that all payments were made in cash. Plaintiff responds that she did not discover that she only paid Herren in cash until after she conducted an in-depth review of her records.
Furthermore, Defendant contends that Plaintiff's payments are not qualifying child care expenses because the transactions between Plaintiff and Herren did not occur at "arm's-length" as required by OAR 150-315.262, the Oregon Administrative Rule (OAR) applicable to the working family credit. (Def's Answer at 3.) *Page 5 
The issue before the court is whether Plaintiff provided sufficient evidence of child care payments such that she should be allowed to claim the working family credit and the child care credit for tax year 2007. In order to determine whether Plaintiff is entitled to claim both credits, the court will first examine whether the evidence provided by Plaintiff is sufficient to prove that she made the alleged payments to Herren, her child care provider, in 2007. Next, the court will determine whether Plaintiff and Herren operated at arm's-length as required by OAR 150-315.262.
A. Sufficiency of the Evidence of Payment for Child CareServices
ORS 315.262 provides a refundable credit for qualifying taxpayers to partially offset the taxpayer's child care costs incurred while the taxpayer is working or attending school.[1] That credit is based on a percentage of the taxpayer's qualifying child care expenses and is commonly referred to as the "working family credit." ORS 315.262(2) states:
 "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)."
In addition to the working family credit, ORS 316.078 provides for a nonrefundable credit for certain employment-related expenses, including child care, paid by a taxpayer for the care of a dependant child or children. That credit is commonly referred to as the "child care credit." The child care credit is specifically tied to Internal Revenue Code (IRC) section 21, the pertinent language being that the amount of the credit is "equal to a percentage of employment-related expenses allowable pursuant to section 21 of the Internal Revenue Code * * *." ORS 316.078(1). *Page 6 
IRC section 21(a)(1), in turn, provides for a credit for "a percentage of the employment related expenses * * * paid by such individual during the taxable year."[2]
To receive either credit, a taxpayer must pay for child care and the care must be necessary to enable the taxpayer to work (or, in the case of the working family credit, look for work or attend school). Plaintiff claimed both a working family credit and a child care credit in 2007.
Here, the case turns on a question of fact, hinging on the credibility of Plaintiff. Plaintiff must persuade the court by a preponderance of the evidence that she paid $2400 total for child care in 2007. See
ORS 305.427 (providing the applicable burden of proof).
A "[p]reponderance of the evidence means the greater the weight of evidence, the more convincing evidence." Feves v. Dept. ofRevenue, 4 OTR 302, 312 (1971) (citation omitted). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v. Dept. ofRev., 310 Or 260, 265, 798 P2d 235 (1990).
In Villatoro v. Dept. of Revenue (Villatoro), TC-MD 081107D, 2009 Ore Tax LEXIS 176 (Aug 14, 2009), the court denied the taxpayers their claimed working family credit and child care credit because they failed to meet their burden of proof.Id. at *9. The taxpayers in Villatoro paid in cash for the alleged child care expenses and did not provide any receipts or documentation in support of their claim. Id. at *2. The alleged child care provider did not testify at trial and the taxpayer could not provide any additional information that the child care provider even existed. Id. at *6-7. The alleged provider did not file an income tax return reporting the purported income.Id. at *7. The court held that the testimony of the taxpayers and a letter from the alleged provider addressed to the taxpayers was insufficient to substantiate their claim and denied the credits.Id. at *9. *Page 7 
Similarly, the taxpayers in Marks v. Dept. of Revenue
(Marks), TC-MD No 070124E, 2007 Ore Tax LEXIS 71 (May 11, 2007) were denied both credits when they reported substantial child care payments in the amount of $13,000 and only provided vague testimony ("about $100 or $200 per week") in their attempt to substantiate the alleged payments. Id. at *2. They did not provide any receipts or cancelled checks. Id. The only evidence the taxpayers provided in support of their claim was a letter from the child care provider, but the provider did not testify and was unavailable to the department for confirmation prior to trial. Id at *3. The court determined that the letter and the taxpayer's own vague testimony was insufficient absent additional evidence regarding the purported dollar amounts of the payments. Id. at *3-4.
In contrast, the court in Rosette v. Dept. of Revenue
(Rosette), TC-MD 080862D, 2009 Ore Tax LEXIS 67 (May 12, 2009) allowed the taxpayer's claimed credits. The taxpayer inRosette provided proof of child care payments in the form of the taxpayer's own sworn testimony and nonconsecutive receipts from the child care provider. Id. at *6-7. The receipts were signed, dated, and provided payment amounts. Id. However, the amounts stated on the "received from" line were actually the account balances and those amounts were not always the same as the payment amounts. Id. at 7. The department challenged the validity of the receipts and claimed that they were "confusing to read"; that the timing of the dates on the receipts "cast[] doubt as to the contemporaneous nature" of the work performed and the payment; and that the amounts on the receipts differed from the amounts given in the provider's signed written statements. Id. at *3-4. The court dismissed that argument, stating that "the court does not agree that Plaintiff should be penalized for the child care provider's booking errors and poor recordkeeping."Id. at *7. *Page 8 
In the present case, Plaintiff provided her own testimony along with two letters from Herren stating that he took care of Plaintiff's children in return for payment in 2007. The court found Plaintiff's testimony to be very credible. Plaintiff also provided letters from Herren that corroborate her testimony regarding the amount and nature of payment.
Additionally, Plaintiff provided receipts, signed and dated by Herren, for the claimed amounts. Plaintiff candidly admitted at trial that the receipts were not always submitted after payment and that sometimes Herren would submit the receipts prior to or contemporaneous with payment. However, the importance of the receipts is that Herren kept a record of the payment amounts he received and that those amounts correspond with the total amount of payments Plaintiff claimed.
This case is distinguishable from Villatoro andMarks and is more similar to Rosette. Just as the court inRosette found that the taxpayer's payments along with imperfect receipts were sufficient to support his claim for child care expenses, Plaintiff similarly provided her own testimony, letters from her child care provider, and signed and dated "receipts" that indicate payment in support of her position. The court finds that the weight of the evidence establishes that Plaintiff paid for child care in cash in the amount of $2400 in 2007.
Defendant is also concerned with alleged inconsistencies between statements Plaintiff made to the conference officer in 2008 regarding her method of payment and those made in her Complaint and at trial. At the telephone conference with Defendant held December 5, 2008, Plaintiff claimed that she made child care payments using cash, checks, and credit cards. However, she later stated that she only paid in cash and she did not provide credit card statements or canceled checks to verify her child care payments. At trial, Plaintiff clarified that she did not pay for anything with a credit card in 2007 and that it was not until she searched her *Page 9 
own personal records and conferred with Herren that she discovered she only paid him in cash. The court is not troubled with those alleged inconsistencies. Plaintiff testified that she made the statements about her records in December, which was understandably a very stressful month for her, given that it was the Christmas season and Plaintiff is a single mother raising two children, working and attending school. Furthermore, it was difficult for her to recollect at the time of the Department of Revenue conference exactly what methods of payment she used to pay Herren in 2007 without performing further research. Plaintiff more fully investigated the matter when it proceeded to trial in the tax court.
B. Arm's-length Transaction
Defendant is also concerned with the nature of Plaintiff's relationship with Herren. Defendant argues that Plaintiff and Herren did not operate at arm's-length; thus, Plaintiff is prohibited from claiming the working family credit. The OAR provision applicable to the working family credit provides that deductible costs do not include "[t]ransactions that are not arm's-length or have no economic substance." OAR 150-315.262(3)(b)(F). "Transactions between related parties rightly generate heightened scrutiny because of the increased potential for favorable treatment (e.g., leniency when the taxpayer cannot afford some or all of the amount due)." Carter v. Dept. of Revenue, TC-MD 080689C,2009 Ore Tax LEXIS 65 at *9 (Apr 30, 2009). However, there is not a rebuttable presumption that a close relationship between parties implies that their transaction was not at arm's-length. Seeid. at *8 (holding that the plaintiff and her child care provider dealt at arm's-length despite their relationship as mother and daughter). The rule merely precludes the deduction of transactions that are not at arm's-length. Id. "Related parties can, and do, deal at arm's-length." Id at *9. The court must weigh all of the evidence and determine the credibility of the witnesses in arriving at its decision. *Page 10 
Plaintiff and Herren are not related. Although Plaintiff acknowledges that she had an amicable relationship with Herren, she contends that the nature of their relationship always surrounded Herren's care of Plaintiff's two children. In 2007, both parties entered into a child care arrangement that was mutually beneficial. Plaintiff employed Herren because her children liked him. Herren, like most college students, was available to work flexible hours and needed extra money. Plaintiff testified that she operated on a cash basis when working with child care providers and Herren was no exception. Furthermore, she did not pay him at regular intervals because that was not his preferred method of payment. Herren provided Plaintiff with "receipts" for the amount of money she owed him. The court is satisfied that Plaintiff and Herren conducted their transactions at arm's-length.
 III. CONCLUSION
On the evidence before it, the court concludes that Plaintiff paid Herren $2400 for child care during the 2007 tax year. Plaintiff is entitled to a child care credit and working family credit, based on her total expenses. Now, therefore, *Page 11 
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.
Dated this ___ day of November 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon November 23, 2010. The Court filed and entered this documenton November 23, 2010.
[1] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2005.
[2] All references to the IRC and accompanying regulations are to the 1986 code and include updates applicable to 2007.
 *Page 1